UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| PAYTEN VAN ROEKEL, | 4:25-CV-04023-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER ON PENDING MOTIONS |
| BRANDON VALLEY SCHOOL DISTRICT 49-2, CITY OF BRANDON, SOUTH DAKOTA, MARK SCHLEKEWAY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; MITZI MOORE, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; TYLER CARDA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; JAMIE STEFFEL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; DOE OFFICERS OF THE CITY OF BRANDON POLICE DEPARTMENT, DOE EMPLOYEES OF THE MINNEHAHA COUNTY JUVENILE DETENTION CENTER, MINNEHAHA COUNTY, SOUTH DAKOTA, STATE OF SOUTH DAKOTA, A POLITICAL SUBDIVISION; AND JORDAN PAULA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | |
| Defendants. | |

Plaintiff Payten Van Roekel initiated this lawsuit against Defendants[1] seeking relief for violations of her constitutional rights and the commission of torts against her from events that

---

[1] The causes of action against the Defendants split the Defendants into three groups: 1) the Brandon Valley School District Defendants, which consists of Brandon Valley School District, Mark Schlekeway, Mitzi Moore, and Jordan Paula; 2) the Brandon Police Department Defendants, which consists of the City of Brandon, the City of Brandon Police Department, Tyler Carda, and Jamie

1

occurred in February of 2022. Doc. 1 ¶ 1. Van Roekel asserts causes of action under 42 U.S.C. § 1983 for violations of the Fourth Amendment; the equal protection and due process clauses of the Fourteenth Amendment; and a civil conspiracy to deprive her of such rights. Id. at 11–19. Van Roekel also asserts state law claims for malicious prosecution, false arrest and imprisonment, and intentional or negligent infliction of emotional distress. Id. at 19–21. The Defendants have moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Docs. 10, 12, 14. The Defendants assert that Van Roekel failed to state a claim and that qualified immunity applies to the individual Defendants barring the suit against them. Docs. 11, 13, 18. The Brandon Police Department ("BPD") Defendants also seek judicial notice of certain City of Brandon Ordinances, which this Court granted during the motion hearing. Docs. 16, 34, 43. This Court also has before it a sister case involving one of the other girls involved in the February of 2022 incident. See Doc. 1 in 4:25-cv-4025-RAL. In that case, the same pending motions were filed by the Defendants. See Docs. 11, 13, 15, 17, 31 in 4:25-cv-4025-RAL. This Court held a hearing on all pending motions before the Court in both cases on November 21, 2025. Doc. 43.

## I.    Factual Allegations

This Opinion and Order makes no findings of fact but takes all the facts and allegations from Van Roekel's Complaint as true and makes all inferences in her favor as the nonmoving party defending against a Rule 12(b)(6) motion to dismiss. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

---

Steffel; and 3) the Minnehaha County Juvenile Detention Center Defendants, which consists of Minnehaha County and Minnehaha County Doe Employees of the Minnehaha County Juvenile Detention Center. This Court will refer to all Defendants collectively as the "Defendants" and the subclasses of Defendants as the "BVSD Defendants," the "BPD Defendants," and the "JDC Defendants."

In February 2022, Van Roekel was a sophomore at Brandon Valley High School ("BVHS"). Doc. 1 ¶ 15. Van Roekel has had an Individualized Education Plan ("IEP") since elementary school due to being diagnosed with specific learning disabilities. Id. ¶ 16. Van Roekel's IEP addresses her difficulties with "the ability to think and reason with words, executive functioning, managing emotions, being easily influenced by others, and struggling with social norms and expectations." Id. Van Roekel, despite her academic challenges, had friends, participated in activities, and had not been disciplined at school prior to the events that took place in February 2022. Id. ¶ 17.

On February 12, 2022, several high school girls of BVHS purchased various items from a party store in Sioux Falls, South Dakota to celebrate Van Roekel's upcoming birthday. Id. ¶ 18. The girls purchased "ballons, a cat pinata, some temporary tattoos, and small plastic babies, identified on the Party City website as table scatter and on the packaging as 'Mini Plastic Babies, Baby Shower Favor Charms.'" Id. The Party City website identified the color of the plastic babies as "deep" with coloration similar to the skin tone of some African Americans. Id. The plastic babies come in other colors including pink, blue, and rainbow, but the color "deep" was the only one available at the place and time when the high school girls visited the party store. Id. ¶¶ 18–19.

The plastic babies had been popular in TikTok videos showing people hiding the plastic babies in various places in school and other public places. Id. ¶ 19. The girls' initial intention was to place the plastic babies in the pinata with the candy; however, they instead made them into necklaces using sewing thread. Id. ¶ 20. To make the necklaces, the girls tied thread around the plastic babies' necks "because that was the only place that the thread seemed to stay." Id. Several days after the party, Van Roekel found left over plastic babies with the string still attached while

3

cleaning her room.  Id. ¶ 21.  She placed two of the strings, each with one plastic baby attached, in her sweatpants pocket and forgot about them.  Id.

On February 22, 2022, Van Roekel found the two strings with plastic babies attached in her pocket before the start of the school day while she was in the BHVS bathroom.  Id. ¶ 22. Several other girls were in the bathroom.  Id.  One of the girls suggested taping the strings with the plastic babies attached to the ceiling and then retrieved scotch tape from the high school office and returned to the bathroom.  Id.  Another girl climbed onto the sink in the bathroom to help tape the strings with the plastic babies attached to the ceiling.  Id.  ¶ 23.

Van Roekel alleges the bathroom in question is a "frequent site of pranks" including "smearing [] Nutella on toilet seats and scribbling [] messages on walls and stall doors."  Id.  Van Roekel and the other girls believed hanging the strings with the deep-colored plastic babies attached by loops around the necks from the ceiling was like "any other practical joke" because similar plastic babies were often hidden around the school.  Id.  Van Roekel did not make any comments, statements, or threats of violence "that could have reasonably led anyone to believe that [she] or the other students who participated in the prank were a threat to anyone at the school or intended to harass or threaten any other individual."  Id. ¶ 24.

Van Roekel was called into the BVHS office at 10:30 a.m. on February 22 to be questioned about the incident by Assistant Principals Mitzi Moore and Jordan Paula.  Id.  ¶ 25.  Initially, Van Roekel denied any involvement in the prank although this was "not an unexpected response from her given the social and informational processing challenges identified in [her] IEP."  Id. ¶ 26. Van Roekel alleges that Moore and Paula raised their voices as they continued to question her without notifying her parents and while she was alone with the two assistant principals for at least one and a half hours.  Id. ¶ 27.  Later in the day, Van Roekel was called back into the office by

4

Principal Mark Schlekeway and admitted to being involved in the "prank." Id. ¶ 28. Schlekeway instructed Van Roekel to write out exactly what happened. Id. Schlekeway was aware of Van Roekel's IEP and her struggles. Id. At 3:00 p.m., Schlekeway contacted Van Roekel's mother, after Van Roekel had endured several hours of questioning by administrators. Id. ¶ 29.

Van Roekel alleges BPD was "actively involved in the investigation throughout the day" through Officer Tyler Carda, who is a police officer for BPD and served as the BVHS School Resource Officer. Id. ¶¶ 9, 30. When Van Roekel's mother arrived at the school, Schlekeway told her Carda wanted to speak with Van Roekel. Id. ¶ 31. Carda read Van Roekel her Miranda Rights and asked if she would agree to waive them. Id. ¶ 32. Van Roekel's mother, a former law enforcement officer and school resource officer, informed Carda that Van Roekel "did not understand her rights or the process as explained" due to her disability. Id. Carda then informed Van Roekel and her mother that Van Roekel was being arrested for a felony hate crime and taken into custody. Id. ¶ 33. Van Roekel alleges the "decision to charge and arrest [her] was made before Carda came into the room to speak with [her]." Id.

BPD Chief of Police Jamie Steffel and at least two other officers were waiting in the lobby of the BVHS administration office. Id. ¶ 34. Van Roekel's mother tried to explain Van Roekel's learning disabilities and the fact that she has an IEP to the officers again. Id. ¶ 35. The BPD officers informed Van Roekel's mother that they had been in contact with the Minnehaha County Juvenile Detention Center ("JDC"), and Van Roekel would be detained overnight at the JDC. Id. ¶ 36. Van Roekel alleges that she did not meet the criteria under the JDC's policies or state law to be detained as a juvenile overnight rather than being released to her parents. Id. ¶ 37. Instead, the "JDC Employees overrode standard policy and decided that due to the felony charge [she] would be housed overnight." Id.

Van Roekel was charged with violation of SDCL § 22-19B-1, which prohibits hate crimes and is a Class 6 felony under South Dakota law. Id. ¶ 38. To be charged under this statute, the state is required to show that a defendant specifically intended to intimidate or harass others because of their race, ethnicity, religion, ancestry, or national origin. Id. No warrant had been issued for Van Roekel's arrest, and no criminal activity or alleged criminal activity had been committed in the presence of any member of BPD or BVHS staff. Id. ¶ 39. Two other girls who had participated in the "prank of hanging toy plastic babies from the ceiling" were also arrested. Id. ¶ 40. Four male officers led the three girls through the school out to the BPD squad cars. Id. Other BVHS students took pictures and videos of the girls being arrested and posted them on social media platforms including Snapchat. Id. Van Roekel was handcuffed, placed into the squad car, and transported to the JDC. Id. ¶ 41.

Upon arriving at the JDC, Van Roekel was searched and questioned about her JDC experience and her mental health. Id. ¶ 42. Van Roekel was told to remove her clothing, one article at a time, and shower while JDC personnel watched. Id. JDC personnel gave Van Roekel clothing and placed her in a solitary room. Id. Van Roekel was "cold, scared, and checked on frequently by staff," resulting in a very difficult and sleepless night. Id. ¶ 43. Van Roekel appeared with her parents before a South Dakota Circuit Court judge the next morning before being released to her parents' custody. Id. ¶ 44. "The transcript of [Van Roekel]'s court appearance notes how the police report is 'inflammatory' and provides a very different account than what the individuals involved all state happened. It was further noted that all girls involved provided the same account of what occurred as [Van Roekel]." Id. ¶ 45. Because of Van Roekel's parents' ties to local law enforcement, the Minnehaha County State's Attorney's Office referred prosecution of the matter

to the South Dakota Attorney General. Id. ¶ 46. The Attorney General's Office dismissed the charge without any additional proceedings. Id.

Upon her return to school, Brandon Valley School District ("BVSD") required Van Roekel to remain in an isolated classroom in the Special Services wing during the school day to continue attending BVHS. Id. ¶ 47. BVSD's position was that Van Roekel would be too much of a disruption if she were allowed to be with other students. Id. Thus, to remain at BVHS and receive necessary services under her IEP, Van Roekel had to stay in the assigned classroom and could only leave under direct supervision during the school day. Id. BVSD did not restrict Van Roekel's movements or location before or after school hours. Id. These requirements remained in effect until the end of the school year. Id. The Complaint does not allege that any of the actions taken by BVSD upon her return from the one-night incarceration are constitutional violations, so these allegations run toward the damages she alleges from the February of 2022 events.

In the fall of 2022, Van Roekel enrolled in a private school because of the isolation and trauma of the events she underwent. Id. ¶ 48. Due to the circulation on social media of the video of Van Roekel's arrest, students at the private school knew of her arrest, "though they believed she had been arrested for dealing drugs." Id. As a consequence of all these events stemming from the February of 2022 arrest, Van Roekel "suffered from serious and significant emotional distress that resulted in the need to obtain treatment from medical providers." Id. ¶ 49.

Van Roekel asserts eight causes of action against the Defendants. Doc. 1. Count I asserts a violation of 42 U.S.C. § 1983 for an unlawful arrest in violation of the Fourth Amendment against the BPD Defendants. Id. at 11–12. Count II asserts a § 1983 violation against the BVSD Defendants for violating Van Roekel's substantive due process rights under the Fourteenth Amendment. Id. at 12–14. Count III asserts a violation of § 1983 against all Defendants for a

violation of the equal protection clause of the Fourteenth Amendment. Id. at 14–15. Count IV alleges another § 1983 violation against the JDC Defendants for a violation of Van Roekel's Fourth and Fourteenth Amendments. Id. at 16–17. Count V alleges a civil conspiracy against the BVSD Defendants and the BPD Defendants. Id. at 18–19. Van Roekel then asserts a malicious prosecution action against the City of Brandon and Minnehaha County in Count VI. Id. at 19–20. Count VII alleges that the BPD Defendants and the JDC Defendants falsely arrested and imprisoned Van Roekel. Id. at 20. Lastly, Van Roekel in Count VIII alleges a cause of action against all Defendants for intentional or negligent infliction of emotional distress. Id. at 21.

## II.    Applicable Legal Standards

### A. Motion to Dismiss Standard

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc., 696 F.3d at 768–69. To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "mere conclusory statements" and "naked assertion[s] devoid of

further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

### B. Qualified Immunity Standard

The Defendants invoke qualified immunity. Doc. 11 at 2, 5–8; Doc. 13 at 8–12; Doc. 18 at 6–17. "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" New v. Denver, 787 F.3d 895, 899 (8th Cir. 2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity "should be decided by the court long before trial" and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." New, 787 F.3d at 899 (citation omitted). The Eighth Circuit permits a Rule 12(b)(6) dismissal based on qualified immunity "when the immunity is established on the face of the complaint." Watkins v. City of St. Louis, 102 F.4th 947, 951 (8th Cir. 2024) (citation omitted).

"To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Id. (cleaned up and citation omitted). In this context, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." Brown v. City of St. Louis, 40 F.4th 895, 899 (8th Cir. 2022) (quoting District of Columbia v. Wesby, 583 U.S. 48, 63 (2018)).

> [T]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. This requires either case law that places the lawfulness of the particular arrest beyond debate or, in the rare obvious case, unlawfulness that is sufficiently clear even though existing precedent does not address similar circumstances.

Brown, 40 F.4th at 899 (cleaned up and citations omitted).

Qualified immunity protects government officials from "the burdens of broad discovery." Wilson v. Northcutt, 441 F.3d 586, 590 (8th Cir. 2006). This immunity from suit prevents unnecessary discovery because it "can be peculiarly disruptive of effective government." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (citation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Id. (citation omitted).

### C. Quasi-Judicial Immunity Standard

The JDC Defendants argue that they are entitled to quasi-judicial immunity. Doc. 13 at 9. "Judicial immunity is immunity from suit." Hamilton v. City of Hayti, 948 F.3d 921, 925 (8th Cir. 2020). "[A] judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. (quoting Mireles v. Waco, 502 U.S. 9, 10 (1991)). A judge, however, is not entitled to judicial immunity for (1) "nonjudicial actions" or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (quoting Mireles, 502 U.S. at 11–12). "Allegations of malice or corruption do not defeat judicial immunity." Id. (citing Stump v. Sparkman, 435 U.S. 349, 355–56 (1978)). Quasi-judicial immunity extends "to officials other than judges . . . because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." Id. at 928 (cleaned up and citation omitted). "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Id. (citation omitted).

### D. Monell Liability Standard

BVSD, City of Brandon, and Minnehaha County argue that there is no Monell claim available against them. Doc. 11 at 8–10; Doc. 13 at 12–18; Doc. 18 at 17–19. "[A] local

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipality may be liable under § 1983 "if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." Corwin v. City of Independence, 829 F.3d 695, 699 (8th Cir. 2016) (cleaned up and citations omitted). The Eighth Circuit, however, has repeatedly held that a Monell claim against a local government body cannot exist if there is no constitutional violation. See Stearns v. Wagner, 122 F.4th 699, 704 (8th Cir. 2024) ("Absent a constitutional violation by an employee, there can be no § 1983 or Monell liability." (cleaned up and citation omitted)); Stockley v. Joyce, 963 F.3d 809, 823 (8th Cir. 2020) (affirming granting of motion to dismiss Monell claim in part because a Monell claim cannot survive without a constitutional violation by the individual defendant); Kingsley v. Lawrence Cnty., 964 F.3d 690, 703 (8th Cir. 2020) (same).

For purposes of Monell liability, "[p]olicy and custom are not the same thing." Corwin, 829 F.3d at 699–700. A custom is "a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999). "[L]iability for an unconstitutional custom . . . cannot arise from a single act." Jenkins v. Cnty. of Hennepin, 557 F.3d 628, 634 (8th Cir. 2009) (cleaned up and citation omitted). A policy, by contrast, is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Corwin, 829 F.3d at 700 (citation omitted).

"A *single decision* by a government's 'authorized decisionmakers' to adopt a particular course of action 'surely represents an act of official government policy,' regardless of 'whether or not that body had taken similar action in the past or intended to do so in the future.'" Sorcan v.

11

Rock Ridge Sch. Dist., 131 F.4th 646, 651 (8th Cir. 2025) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986)).

> Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, that act must come from one in an authoritative policy making position and represent the official policy of the municipality. Therefore, when an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.

Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 652 (8th Cir. 1998) (cleaned up and citations omitted). "Whether a person is an authorized policymaker for purposes of assigning municipal liability is a question of state law." Id.

## III.  Discussion and Analysis

### A.  Count I: Fourth Amendment Unlawful Arrest Against the BPD Defendants

Van Roekel alleges the BPD Defendants were without probable cause or a lawful basis to arrest Van Roekel for a violation of SDCL § 22-19B-1 and thus violated her Fourth Amendment rights to be free from unreasonable seizures by arresting her. Doc. 1 ¶ 53. Van Roekel alleges that the BPD Defendants were acting pursuant to an unofficial custom or policy of the City of Brandon and under direction of those possessing decision-making authority on BPD's arrest policies. Id. ¶ 54. Due to the officer's allegedly unconstitutional detention, Van Roekel has suffered injury and alleges that the BPD Defendants acted with an evil motive or intent in placing her under arrest. Id. ¶¶ 55–56.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures.'" Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (quoting U.S. Const. amend IV). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is

being committed." Id. (citation omitted).  Thus, a constitutional violation occurs when an officer conducts an arrest without probable cause to believe that a crime has been committed.  Id.

"Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense."  Brown, 40 F.4th at 900 (cleaned up and citation omitted).  "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck, 543 U.S. at 153 (citation omitted).  "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  Brown, 40 F.4th at 900 (cleaned up and citation omitted).  The Eighth Circuit has explained, in this analysis, there is "no place" for "finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, but rather, this is an objective standard requiring that we afford officers substantial latitude in interpreting and drawing inferences from factual circumstances."  Id. (cleaned up and citations omitted).  "Probable cause 'is not a high bar.'"  Wesby, 583 U.S. at 57 (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)).

Separately, "arguable probable cause" may exist "where the officers act on a mistaken belief that probable cause exists, if that mistake is objectively reasonable."  Brown, 40 F.4th at 900–01; see also Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").  Probable cause and "arguable probable cause" are not interchangeable, and the analysis of "arguable probable

cause" is properly considered on the second prong of the analysis to determine whether an officer violated a clearly established right. <u>Brown</u>, 40 F.4th at 901.

The BPD Defendants first contend that no constitutional deprivation occurred because they had probable cause to arrest Van Roekel for a violation of SDCL § 22-19B-1. Doc. 18 at 8–14. Alternatively, the BPD Defendants contend they had arguable probable cause to detain Van Roekel, which entitles them to qualified immunity from suit because they did not violate a clearly established right of Van Roekel. <u>Id.</u> at 14. Van Roekel counters that the BPD Defendants did not conduct an independent investigation, and if they had, would have come to the conclusion that Van Roekel lacked the specific intent to commit a crime under SDCL § 22-19B-1. <u>See</u> Doc. 24 at 10–11.

> Under SDCL § 22-19B-1,
>
> No person may maliciously and with the specific intent to intimidate or harass any person or specific group of persons because of that person's or group of persons' race, ethnicity, religion, ancestry, or national origin:
>
>> (1) Cause physical injury to another person; or
>> (2) Deface any real or personal property of another person; or
>> (3) Damage or destroy any real or personal property of another person; or
>> (4) Threaten, by word or act, to do the acts prohibited if there is reasonable cause to believe that any of the acts prohibited in subdivision (1), (2), or (3) of this section will occur.
>
> A violation of this section is a Class 6 felony.

"Deface" is defined in SDCL § 22-19B-2 as including "cross-burnings or the placing of any word or symbol commonly associated with racial, religious, or ethnic terrorism on the property of another person without that person's permission."

The BPD Defendants, using the Complaint's factual allegations, argue that the "prank" depicted a symbolic lynching and occurred shortly after a different incident (referenced in the

14

Complaint) of racial animus toward a Black BVHS Student.[2]  Doc. 18 at 9–11.  The BPD Defendants assert that the lack of Supreme Court of South Dakota precedent interpreting SDCL § 22-19B-1 militates in their favor because no clear precedent indicates that they lacked probable cause to arrest Van Roekel.  Id. at 13–14.  The officers contend even if they made a mistake of law, that mistake was objectively reasonable, providing them with "arguable probable cause," considering the complexity of the statute and lack of precedent interpreting it.  Id. at 13–14.

Here, even accepting the Complaint's factual allegations as true, Van Roekel has not plausibly alleged the absence of probable cause.  The Complaint acknowledges facts that, on their face, supplied the officers with a reasonable basis to believe that Van Roekel had defaced property to intimidate or harass a racial group contrary to SDCL § 22-19B-1.  First, the City of Brandon at the time had recently dealt with another threat made to a Black BVHS Student.  See Doc. 1 ¶ 90.  Second, the "prank" involving string around the neck of a deep-colored plastic baby suspended from the ceiling evokes a lynching[3] within the "deface" element of SDCL § 22-19B-1.  Third, Van Roekel initially denied involvement and later changed her story.[4]  See Wesby, 583 U.S. at 59–60 (noting that a suspect's change in her story was a factor to be considered in the totality of the circumstances analysis supporting probable cause to make an arrest).  These factual allegations affirmatively support the conclusion that a prudent officer could have believed the statutory elements were satisfied.  Additionally, without any prior precedent interpretating the statute, there

---

[2] This incident is embraced by the Complaint because Van Roekel alleges that the Defendants' response to her actions was affected by the incident.  See Doc. 1 ¶ 90.
[3] For Van Roekel, the deep-colored plastic babies strung up by their necks and hung from a ceiling was not intended to evoke an image of a lynching and was intended as an innocent prank.  But probable cause is an objective standard.  See Brown, 40 F.4th at 900.
[4] BPD officials would have had less reason to suspect a specific intent if Van Roekel had immediately acknowledged doing so and expressed obliviousness to doing so being in any way offensive.

appears to be no "case law that places the lawfulness of the particular arrest beyond debate." Brown, 40 F.4th at 899 (cleaned up and citation omitted). See also Wesby, 583 U.S. at 64 ("[A] body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." (cleaned up and citation omitted)). At a minimum, the officers had arguable probable cause, which is sufficient to entitle them to qualified immunity, so the claim against them must be dismissed. See Brown, 40 F.4th at 900–01.

The BPD Defendants contend that the Fourth Amendment claim against the City of Brandon must be dismissed because Van Roekel failed to establish a constitutional violation by the individual BPD Defendants. Doc. 18 at 18. Alternatively, the BPD Defendants argue that the claim must be dismissed because Van Roekel failed to plead under Monell what specific "custom or policy she is relying upon, or how that unidentified custom or policy was the 'moving force' behind the alleged constitutional violation." Id. at 19. Instead, the BPD Defendants assert that Van Roekel's Complaint is "only [] a formulaic recitation of elements without any factual grounds." Id.

The Eighth Circuit has repeatedly held that a Monell claim against a local municipality cannot exist if there is no underlying constitutional violation. See Stearns, 122 F.4th at 704 ("Absent a constitutional violation by an employee, there can be no § 1983 or Monell liability." (cleaned up and citation omitted)); Stockley, 963 F.3d at 823 (affirming dismissal of Monell claim in part because a Monell claim cannot survive without a constitutional violation by the individual defendants). Since this Court has found no constitutional violation by the individual BPD Defendants, the Monell claim against the City of Brandon must be dismissed as well.

**B. Count II: Fourteenth Amendment Substantive Due Process Rights Against the BVSD Defendants**

Van Roekel asserts the BVSD Defendants violated her Fourteenth Amendment substantive due process rights by creating "the situation that led to [her] wrongful arrest" because they were actively involved in the determination to charge and arrest her, as well as the decision regarding whether she would stay overnight at the JDC. Doc. 1 ¶ 59. Van Roekel alleges the BVSD Defendants created and increased the risk of harm to Van Roekel through their involvement in the investigation thereby furthering her being subjected to criminal arrest, detention, and prosecution. Id. ¶ 61. Van Roekel claims that the affirmative actions of the BVSD Defendants in assisting BPD made her more likely to suffer injury. Id. ¶ 62. Van Roekel asserts that BVSD is also liable under 42 U.S.C. § 1983 because a custom or policy of BVSD or BVSD's officials with final policymaking authority caused the violation of her constitutional rights. Id.

To adequately plead a substantive due process violation, a plaintiff "must allege actions by a government official which violated one or more fundamental constitutional rights and were shocking to the contemporary conscience." C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347, 591 F.3d 624, 634 (8th Cir. 2010) (cleaned up and citation omitted). The Eighth Circuit explained this high standard by stating,

> [s]ubstantive due process is concerned with violations of personal rights [] so severe[,] so disproportionate to the need presented, and [] so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

Id. (citation omitted).

"Generally, states have no affirmative obligation to protect individuals against private violence." Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). "Substantive due process does,

17

however, require a state to protect individuals under two theories." Id. Van Roekel contends the state-created danger theory applies to the BVSD Defendants' conduct, because "the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." Id.; Doc. 26 at 12. Van Roekel must prove the following to succeed under the state-created danger theory: 1) she was a member "of a limited, precisely definable group, 2) [the BVSD Defendants'] conduct put [her] at a significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to [the BVSD Defendants], 4) [the BVSD Defendants] acted recklessly in conscious disregard of the risk, and 5) in total, [the BVSD Defendants'] conduct shocks the conscience." Hart, 432 F.3d at 805 (citation omitted).

"Mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." Id. (citation omitted). The Eighth Circuit has "held more than once that gross negligence is not actionable . . . under § 1983." Id. (cleaned up and citation omitted). "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." Id. at 806 (citation omitted). Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citation omitted).

Van Roekel was a juvenile in a high school setting in February of 2022 when the relevant events occurred. The Supreme Court of the United States has explained the peculiar setting of a school for Fourth Amendment search and seizure purposes in New Jersey v. T.L.O., 469 U.S. 325 (1985).

> [T]he preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult. Events calling for discipline are frequent occurrences and sometimes require immediate, effective

action. Accordingly, we have recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship.

T.L.O., 469 U.S. at 339–40 (cleaned up and citations omitted). The Supreme Court established a two-prong test to determine whether the Fourth Amendment is violated in the school setting: "whether the [] action was justified at its inception," and "whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 341 (cleaned up and citation omitted). A search is "'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. at 342.

The individual BVSD Defendants assert that qualified immunity protects them from a substantive due process claim. Doc. 11 at 5–8. The BVSD Defendants note that Van Roekel did not allege how BVSD cooperating with law enforcement during an investigation created a risk of serious, immediate, and proximate harm, nor how this risk was obvious to the individual BVSD Defendants. Doc. 37 at 4. The BVSD Defendants contend that Van Roekel failed to allege facts that shock the contemporary conscience. Id. at 4–5. The BVSD Defendants argue that since Van Roekel has not established a substantive due process violation under the state-created danger theory, she has not established a constitutional deprivation, and the claim must be dismissed against them. Id. at 5–6.

Van Roekel contends that the BVSD Defendants were the only source BPD obtained information from leading to her improper arrest, and that although Van Roekel was not involved in the prior racially charged incident, it did impact and alter the BVSD Defendants' actions toward Van Roekel causing her to be harmed. Doc. 26 at 13. Van Roekel alleges that the BVSD Defendants assisted BPD in a criminal investigation, kept her in an office for approximately one

19

and a half hours, raised their voices at her, and then questioned her a second time and asked her to write down what happened. Doc. 1 ¶¶ 25, 27–28  Van Roekel also alleges that the BVSD Defendants knew she was on an IEP and thereby vulnerable. Id. ¶ 28. Accepting the Complaint's factual allegations as true, Van Roekel has not plausibly alleged a substantive due process violation for several reasons.

First, the alleged affirmative actions by the individual BVSD Defendants creating the alleged danger involve assisting BPD with an investigation.  Assisting law enforcement with a criminal investigation following an incident such as this does not in itself create a danger to an individual, even one who is in a school setting and subject to an IEP.  In contrast, Eighth Circuit cases have generally found a state actor subjecting an individual to physical danger to be sufficient for Hart's second element to establish the state-created danger theory.  See, e.g., Est. of Johnson v. Weber, 785 F.3d 267, 269 (8th Cir. 2015) (where inmate was intentionally murdered by two other escaping inmates); Fields v. Abbott, 652 F.3d 886, 888–89 (8th Cir. 2011) (where jailer alleged physical "injuries to her back, rotator cuffs, hips, and hand" from prison inmates); Hart, 432 F.3d at 803–804 (where officers alleged danger from release of personnel files to criminal defendant they had arrested).

Second, Van Roekel does not plausibly allege deliberate indifference by the individual BVSD Defendants. Deliberate indifference requires the individual BVSD Defendants to "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." Hart, 432 F.3d at 806. The Complaint alleges that Van Roekel was on an IEP but does not allege any nonconclusory facts showing that the school administrators knew or should have known of a substantial risk of serious harm or impending danger to Van Roekel, let alone that they acted in disregard of that knowledge. See Id.

Third, the conduct of the individual BVSD Defendants assisting in the investigation cannot be seen as shocking to the contemporary conscience. See Doe v. Aberdeen Sch. Dist., 42 F.4th 883, 894 (8th Cir. 2022) ("Plaintiffs must show that the behavior of the government official was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (cleaned up and citation omitted)). Keeping Van Roekel in a room for ninety minutes and questioning her at times with raised voices is less severe than other instances the Eighth Circuit has found to not shock the contemporary conscience. See Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (finding a teacher yelling and screaming at students, using foul language, calling students "stupid" and referring to students as "'bimbos,' 'fatso,' and the 'welfare bunch'" did not violate students' constitutional rights); T.S.H. v. Green, 996 F.3d 915, 918–21 (8th Cir. 2021) (deeming a seizure of students by school coach extending for a period of hours was reasonable). Lastly, "schools require[] a certain degree of flexibility in school disciplinary procedures" to maintain security and order. T.L.O., 469 U.S. at 339–40.

Because the Complaint fails to allege affirmative conduct that exposed Van Roekel to harm, deliberate indifference by the school administrators, or conscience-shocking behavior, it does not state a substantive due process violation under the state-created danger theory. Absent a plausible constitutional violation, Van Roekel necessarily fails to overcome qualified immunity. Accordingly, the substantive due process claim based on the state-created danger theory must be dismissed against the individual BVSD Defendants.

As discussed above, the Eighth Circuit has repeatedly held that a Monell claim against a local municipality cannot exist if there is no underlying constitutional violation. See Stearns, 122 F.4th at 704 ("Absent a constitutional violation by an employee, there can be no § 1983 or Monell liability." (cleaned up and citation omitted)); Stockley, 963 F.3d at 823 (affirming dismissal of

Monell claim in part because a Monell claim cannot survive without a constitutional violation by the individual defendants). Since this Court has found no constitutional violation by the individual BVSD Defendants, the Monell claim against BVSD must be dismissed as well.

### C. Count III: Fourteenth Amendment Equal Protection Against All Defendants

In Count III, Van Roekel asserts that all Defendants "discriminated against [her] on the basis of her race in the initiation of criminal charges, arrest, detention and discipline related to the activities of February 22, 2022." Doc. 1 ¶ 68. Van Roekel alleges that she was treated differently than others engaged in similar conduct and such treatment stemmed from a discriminatory intent. Id. ¶ 69. Van Roekel contends that BVSD, City of Brandon, and Minnehaha County are liable because a custom or policy caused the equal protection violations. Id. ¶¶ 71–73. Van Roekel also asserts Defendants violated her right to equal protection, thereby causing her to suffer damages for "medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, and pain and suffering." Id. ¶¶ 70, 74.

"The Equal Protection Clause requires that the government treat such similarly situated persons alike." Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013) (cleaned up and citation omitted). To adequately plead an equal protection claim, the plaintiff must allege that she was "treated differently from others similarly situated." Does 1–2 v. Regents of the Univ. of Minn., 999 F.3d 571, 580 (8th Cir. 2021) (citation omitted). Put differently, Van Roekel must "allege facts showing that similarly situated alleged comparators were treated differently." Id. at 581 (cleaned up and citation omitted). "Alleged comparators must be similarly situated in all relevant aspects." Id. at 580 (cleaned up and citation omitted). "In a case of alleged discriminatory discipline, . . . [a plaintiff] must plausibly plead that the acts of others . . . who were not disciplined or were disciplined less severely were of comparable seriousness to their infraction." Id. (cleaned

up and citation omitted). The Eighth Circuit has noted that allowing vague equal protection claims involving student discipline may create a slippery slope:

> [I]f we allow a complaint like this to proceed in the context of student discipline, every conclusory selective-enforcement claim would lead to discovery concerning the entire disciplinary history of a [school] and then to a confusing, unmanageable and ultimately incoherent retrial of every disciplinary decision, including decisions not to investigate.

Id. at 581 (citation omitted). To state an equal protection claim against the individual BVSD Defendants and individual JDC Defendants, Van Roekel must allege that: "(1) [s]he is otherwise similarly situated to members of the unprotected class; (2) [s]he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000).

The law requires a bit more to allege an equal protection clause claim against the individual BPD Defendants. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). To state an equal protection claim against the individual BPD Defendants, Van Roekel must allege both a discriminatory purpose and discriminatory effect. Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003). "Proving discriminatory purpose is no simple task." Gilani v. Matthews, 843 F.3d 342, 349 (8th Cir. 2016). This requires a plaintiff to "prove that the officer exercised his discretion to enforce a law solely on the basis of race." Clark v. Clark, 926 F.3d 972, 980 (8th Cir. 2019). But the Eighth Circuit has previously stated, "[t]o show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race." United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996). In 2022, the Eighth Circuit acknowledged this discrepancy but did not "conclusively resolve" the issue because the plaintiff "failed to show that the officers were motivated in part by [his] race." Saunders v. Thies, 38 F.4th 701, 714–15 (8th Cir. 2022). "To establish discriminatory effect, [a plaintiff] must show people of another ethnicity

violated the law and the law was not enforced against them." Gilani, 843 F.3d at 348 (citation omitted).

The Defendants contend that Van Roekel has failed to plead comparators "similarly situated in all relevant aspects." See Doc. 11 at 11. Van Roekel counters that she was treated differently than other pranksters who smeared Nutella on the toilets and scribbled on the walls in the bathroom. Doc. 24 at 20; Doc. 26 at 16–17. Van Roekel notes that her treatment of being arrested and removed from school was different than her alleged comparators. Doc. 24 at 20; Doc. 26 at 17; Doc. 27 at 9.

Accepting all of the Complaint's factual allegations as true, Van Roekel has failed to plausibly plead an equal protection violation. Van Roekel's alleged comparators are not "similarly situated in all relevant aspects." Regents of the Univ. of Minn., 999 F.3d at 580. Indeed, she must plead that the acts of others "were of comparable seriousness to [her] infraction." Id. (cleaned up and citation omitted). Hanging from the ceiling deep-colored plastic babies by strings tied around their necks in a school bathroom has a different connotation (even if unintended) and thus is not comparable to smearing Nutella and non-threatening scribbling on the walls in the same bathroom. Van Roekel has failed to allege comparators "similarly situated in all relevant aspects," let alone comparators that have been treated differently. Nor has she pleaded that those comparators were of a different racial background. Van Roekel's equal protection claim against the individual BVSD Defendants and individual JDC Defendants must be dismissed.

Taking all the Complaint's factual allegations as true, Van Roekel does not sufficiently plead the discriminatory effect prong of an equal protection claim against the law enforcement officers. Van Roekel does not allege any prankster to be a certain race, let alone one that is a different race than she is. Without this, she cannot "show that people of another ethnicity violated

the law and the law was not enforced against them." Gilani, 843 F.3d at 348 (citation omitted). Since Van Roekel failed to sufficiently plead facts showing discriminatory effect, the claim against the individual BPD Defendants must be dismissed.

As stated above, the Eighth Circuit has repeatedly held that a Monell claim against a local government entity cannot exist if there is no constitutional violation. See Stearns, 122 F.4th at 704 ("Absent a constitutional violation by an employee, there can be no § 1983 or Monell liability." (cleaned up and citation omitted)); Stockley, 963 F.3d at 823 (affirming dismissal of Monell claim in part because a Monell claim cannot survive without a constitutional violation by the individual defendants). Since this Court has found no underlying equal protection violation by any of the individual Defendants, the equal protection claims against BVSD, City of Brandon, and Minnehaha County must be dismissed as well.

### D. Count IV: Violation of Fourth and Fourteenth Amendments Against the JDC Defendants

In Count IV, Van Roekel asserts that the JDC Defendants violated her Fourth and Fourteenth Amendment rights by detaining her overnight rather than releasing her to her parents. Doc. 1 ¶¶ 77–78, 80–81. Van Roekel alleges that the Doe JDC Defendants violated her Fourteenth Amendment due process rights because they "failed to follow established state law and the implementing policies and procedures for determining when a minor is to be housed overnight prior to an initial appearance rather than being released to her parents." Id. ¶ 78. Van Roekel also alleges that the staff at the JDC had been advised by a South Dakota Circuit Court judge that they may have been improperly housing juveniles overnight. Id. ¶ 79. Van Roekel alleges that the Doe JDC Defendants acted with deliberate indifference to her established rights. Id. ¶ 81.

25

Van Roekel further asserts that Minnehaha County violated her constitutional rights by "creating and maintaining a policy and custom and/or practice of unlawfully detaining and housing juveniles in the detention facility." Id. ¶ 82. Van Roekel alleges that the policies or customs are intentional or the result of deliberate indifference by Minnehaha County through its decision makers. Id. ¶ 83. Van Roekel asserts that Minnehaha County failed to properly train, supervise, or discipline staff "within the JDC as to the legal requirements and protections applicable to housing juveniles upon arrest." Id. ¶ 84. Due to these actions of Minnehaha County, Van Roekel alleges that she has suffered damages. Id. ¶ 85.

The test for an unreasonable seizure under the Fourth Amendment is relatively straightforward: (1) whether there was a seizure; and (2) whether the seizure was objectively unreasonable under the circumstances. See Hawkins v. City of Farmington, 189 F.3d 695, 701–02 (8th Cir. 1999). "A seizure occurs if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Haynes v. Minnehan, 14 F.4th 830, 835 (8th Cir. 2021) (cleaned up and citation omitted). "Reasonableness of the seizure must be determined on the totality of the circumstances and is to be judged from the perspective of a reasonable officer on the scene without regard to the underlying intent or motivation." Hawkins, 189 F.3d at 702.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." Schmidt v. Des Moines Pub. Schs., 655 F.3d 811, 817 (8th Cir. 2011) (citation omitted). "Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460

26

(1989)). The Eighth Circuit has found a "clearly established liberty interest in being freed from prison." Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993).

The individual JDC Defendants first contend that the temporary detention of Van Roekel was permitted by South Dakota law. Doc. 13 at 7. They cite to SDCL title 26, which regulates minors. See id. Under SDCL § 26-8C-3.1(b), the presiding judge in each circuit must appoint "juvenile detention staff or juvenile reception and intake center staff to serve as intake officers." The individual JDC Defendants assert they were "intake officers" as defined by South Dakota law. Doc. 13 at 7. The South Dakota chapter on Juvenile Court provides: "'[w]ithout a noticed hearing, the court *or an intake officer* may immediately issue a written temporary custody directive' upon receiving sworn oral testimony from a law enforcement officer with the belief that an alleged delinquent child [1] seriously endangers others or [2] there is need for protection of the child." Id. (quoting SDCL § 26-7A-13 and adding emphasis). "No child may be held in temporary custody longer than forty-eight hours, or twenty-four hours pursuant to § 26-8B-3." Id. (quoting SDCL § 26-7A-14). "Notwithstanding § 26-7A-14, . . . [a] . . . delinquent child may be held in temporary custody until released by order of the court." Id. (quoting SDCL § 26-7A-16). Further, SDCL § 26-7A-22 states, "The taking of any child into temporary custody under this chapter . . . is not an arrest and does not constitute a police record." Id. at 8 (quoting SDCL § 26-7A-22). Relying on these statutes, the JDC Defendants assert that taking temporary custody of juveniles is "permitted and not an arrest under South Dakota law," and thus "do[es] not constitute a seizure under the Fourth Amendment." Id.

The individual JDC Defendants' argument, however, overlooks two points. First, a detention under state law still constitutes a seizure under the Fourth Amendment, albeit perhaps, not an unreasonable one. See Torres v. Madrid, 592 U.S. 306, 311 (2021) ("This case concerns

27

the seizure of a person, which can take the form of physical force or a show of authority that in some way restrain[s] the liberty of the person." (citation and internal marks omitted)). See also id. at 325 ("The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones."). Second, the JDC Defendants omit part of SDCL § 26-7A-13, which includes a cross reference to SDCL § 26-8C-3. SDCL § 26-7A-13 provides that the law enforcement officer must state good cause pursuant to SDCL § 26-8C-3, in the case of a delinquent child, to believe that one of three conditions—the child seriously endangers others, is in need of protection, or has run away or escaped from her parents—is met before an intake officer may issue a temporary custody directive without a noticed hearing. SDCL § 26-7A-13. SDCL § 26-8C-3 provides:

> An apparent or alleged delinquent child taken into temporary custody by a law enforcement officer prior to a temporary custody hearing *shall* be released to the child's parents, . . . *unless* the parents . . . cannot be located, or in the judgment of the intake officer, are not suitable to receive the child, in which case the child shall be placed in shelter. A child *may not* be placed in detention *unless* the intake officer finds that the parents . . . are not available or are not suitable to receive the child, and finds at least one of the following circumstances exists:
> . . .
> (2) The child is charged with . . . a serious property crime, which, if committed by an adult, would be a felony[.]

SDCL § 26-8C-3 (emphasis added). Thus, under SDCL § 26-8C-3, prior to a temporary custody hearing, a delinquent child must be released to her parents, rather than being placed in temporary custody, unless the parents cannot be located, or the intake officer determines that the parents are not suitable to receive the child. Nothing in the Complaint allows this Court to infer that the intake officer abided by SDCL § 26-8C-3 during Van Roekel's intake process.

The individual JDC Defendants next contend that absolute judicial immunity or quasi-judicial immunity bars the suit against them. Doc. 13 at 8–12. The individual JDC Defendants assert that they are "intake officers" as defined by SDCL § 26-7A-1(20) and acting as a judge's designee when they issued Van Roekel's temporary custody directive. Id. at 10–11. Since the

individual JDC Defendants were acting as "intake officers" as a part of the juvenile process, they assert judicial immunity applies to and protects them from suit. Id. Van Roekel counters, however, that at this stage, this Court cannot determine on the well-pleaded Complaint whether the individual JDC Defendants meet the statutory definition of an "intake officer." Doc. 27 at 15.

Taking all of the factual allegations of the Complaint as true, Van Roekel has plausibly alleged a constitutional violation by the individual JDC Defendants. Van Roekel alleges that she was wrongfully detained overnight, rather than being released to her parents. Doc. 1 ¶¶ 37, 78, 82–83. Van Roekel further alleges that at least one state court judge had advised the JDC that they were improperly housing juveniles overnight.[5] Id. ¶ 79. Under SDCL § 26-8C-3, a delinquent child must be released to their parents unless they cannot be located, or a judicial intake officer decides that they are not suitable to take the child. Similar to Slone, where the plaintiff's release was mandated by a court order, under title 26, Van Roekel had a clearly established right to be free from detention if the exceptions were not met. See Slone, 983 F.2d at 110 (finding a "clearly established liberty interest in being freed from prison."). See also Golberg v. Hennepin Cnty., 417 F.3d 808, 811 (8th Cir. 2005) ("Our opinions cited the plaintiff's liberty interest in a timely release, which suggest that the right to release from initially lawful detention is based upon the substantive component of the Due Process Clause, rather than the Fourth Amendment."). As Van Roekel argues, this Court cannot determine on the face of the Complaint whether the individual JDC

---

[5] At the motion hearing, Plaintiff's counsel informed this Court that then South Dakota State Circuit Court Judge Douglas E. Hoffman made statements regarding the JDC's improper detention of juveniles during Van Roekel's initial appearance before him. Van Roekel subsequently filed a copy of her temporary custody hearing transcript before Judge Hoffman on February 23, 2022. Doc. 45-3. There is enough alleged in the Complaint for the Fourth and Fourteenth Amendment claim against the JDC Defendants to survive a motion to dismiss, so this Court need not determine whether the transcript of Van Roekel's temporary custody hearing and Judge Hoffman's statement during it are embraced by the pleadings.

Defendants are entitled to judicial immunity. Van Roekel's allegations of a Fourth and Fourteenth Amendment violation against the individual JDC Defendants are enough to survive a motion to dismiss, and the JDC Defendants' motion to dismiss this claim is denied.

Van Roekel alleges that the JDC Defendants were acting pursuant to a Minnehaha County policy or custom when they made the determination to detain Van Roekel overnight. Doc. 1 ¶ 82. Minnehaha County asserts that the claim cannot be maintained against the County because 1) the underlying constitutional deprivation did not occur; 2) as a matter of law, Van Roekel cannot establish a policy or custom caused a constitutional violation; and 3) Van Roekel failed to allege a plausible failure-to-train claim. Doc. 13 at 12–19. This Court has found enough alleged for the underlying claim to survive a Rule 12(b)(6) motion to dismiss; thus, the JDC Defendants' first argument fails.

The JDC Defendants assert that "Minnehaha County cannot be liable as matter of law for the policy . . . because state law requires Minnehaha County to follow a state-wide policy that determines where to send juveniles who come into contact with law enforcement." Doc. 13 at 13. Under South Dakota law, according to the JDC Defendants, the JDC is required to use "the objective risk assessment policy adopted by the State of South Dakota and the South Dakota Supreme Court in Rule 15-14." Id. The JDC Defendants then contend that Van Roekel has failed to plausibly allege an unofficial custom by failing to allege "'a continuing, widespread, persistent pattern of unconstitutional misconduct . . .' and 'deliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" Id. at 15 (quoting Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018)).

Taking all of the allegations of the Complaint as true, Van Roekel has plausibly alleged a Monell claim against Minnehaha County for the Fourth and Fourteenth Amendment claim. A

custom is "a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." Johnson, 172 F.3d at 536. Here, Van Roekel has pleaded that a South Dakota state circuit court judge had advised the JDC that they were improperly housing juveniles overnight, that Van Roekel has claimed she was one such individual, and that Minnehaha County practices and policies led to her improper detention. Doc. 1 ¶¶ 78–84. This allegation asserts that Minnehaha County was put on notice of "a persistent, widespread pattern of unconstitutional conduct" and "subsequently react[ed] with deliberate indifference or tacit authorization." See Johnson, 172 F.3d at 536. Van Roekel's allegations are sufficient to state a plausible Monell claim against Minnehaha County, and the JDC Defendants' motion to dismiss this claim is denied.

### E. Count V: Civil Conspiracy Against the BVSD Defendants and the BPD Defendants

In Count V, Van Roekel asserts that the BVSD Defendants and the BPD Defendants conspired to violate her rights under the Fourth and Fourteenth Amendments. Doc. 1 ¶ 88. Specifically, that the BVSD Defendants and the BPD Defendants

> engaged in a conspiracy and unlawful agreement to deprive [Van Roekel] of her constitutional and statutorily protected rights and acted . . . to (1) unlawfully arrest and detain [Van Roekel] without probable cause or a warrant; (2) initiate criminal charges against [Van Roekel] in violation of her rights under the Fourteenth Amendment to equal protection and substantive due process[;] (3) jointly act to effectuate her detention overnight at JDC[;] and (4) collaborate to advance false and misleading police reports resulting in the detention and prosecution of [Van Roekel].

Id. ¶ 89. Van Roekel alleges the purpose of the conspiracy was "to provide a public display of effort towards addressing acts of students that appear to involve race" due to a then-recent racially motivated incident involving a BVHS student. Id. ¶ 90. Van Roekel alleges these actions of the

31

BVSD Defendants and the BPD Defendants were motivated by an evil motive and caused her damages. Id. ¶¶ 91–92.

To prove a civil conspiracy claim under § 1983, a plaintiff "must show that the officer conspired with others to deprive [her] of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured [her]." Kingsley, 964 F.3d at 702 (cleaned up and citation omitted). Additionally, the plaintiff is "required to prove a deprivation of a constitutional right or privilege in order to prevail" on such a claim. Id. (citations omitted).

The BVSD Defendants and the BPD Defendants contend that, as they have argued above, the alleged underlying constitutional violations fail to state claims and therefore, cannot support a civil conspiracy claim. Doc. 11 at 11–12; Doc. 18 at 21–22. Van Roekel is "required to prove a deprivation of a constitutional right" and has not alleged facts sufficient to maintain claims for constitutional violations by the BVSD Defendants and the BPD Defendants. Thus, this Court must dismiss Count V of the Complaint for civil conspiracy. See Kingsley, 964 F.3d at 702–03.

### F. State Law Claims

Van Roekel also brings three state law claims against the Defendants under this Court's supplemental jurisdiction authority. "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639–40 (2009) (collecting cases). Here, this Court has not

dismissed every federal claim and retains supplemental jurisdiction over the state law claims for the purposes of deciding the motions to dismiss.

### 1. Count VI: Malicious Prosecution Against the City of Brandon and Minnehaha County

Van Roekel alleges that the City of Brandon and Minnehaha County unlawfully brought criminal charges and a prosecution against her. Doc. 1 at 19–20. Van Roekel alleges that the City of Brandon and Minnehaha County were without probable cause to initiate criminal charges against her and the prosecution was with malice. Id. ¶¶ 95–96. The criminal proceedings against Van Roekel were dismissed soon after her allegedly unlawful arrest. Id. ¶ 94.

Under South Dakota law,

> [a] claim for malicious prosecution requires the plaintiff to prove: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.

Harvey v. Reg'l Health Network, Inc., 906 N.W.2d 382, 395 (S.D. 2018) (cleaned up and citation omitted).

Under the fourth prong regarding probable cause, "[o]ne does not need to be certain of the outcome to have probable cause for initiating an action." Manuel v. Wilka, 610 N.W.2d 458, 464 (S.D. 2000). "[I]n determining whether one has probable cause, the conduct of the defendant in the malicious prosecution action is to be weighed in view of what reasonably appeared to him at the time of instituting the prior proceeding, not in the light of subsequently appearing facts." Id. (cleaned up and citation omitted). "The existence of probable cause to arrest is a complete bar to false arrest and malicious prosecution claims." Heib v. Lehrkamp, 704 N.W.2d 875, 884 (S.D. 2005).

33

Under the fifth prong, "[m]alice is essential to the maintenance and recovery of a malicious prosecution action." Manuel, 610 N.W.2d at 465. "Malice exists when the proceedings are instituted primarily for an improper purpose." Id. (cleaned up and citation omitted). An improper purpose exists when a party "was actuated by any unjustifiable motive, as where he did not believe his claim would be held valid, or where his primary motive was hostility or ill will[.]" Id. (citation and internal marks omitted). "However, there does not need to be a showing of actual hostility, a grudge, or ill will between the individuals involved to support a finding of malice in an action for malicious prosecution." Id. (citation and internal marks omitted).

Here, accepting all of the factual allegations as true, Van Roekel has failed to plausibly allege a malicious prosecution claim against the City of Brandon and Minnehaha County. As this Court has addressed above, based on what facts are alleged in the Complaint, the individual BPD Defendants had probable cause to arrest Van Roekel for a violation of SDCL § 22-19B-1. Thus, the fourth element of malicious prosecution is not met even accepting the facts of the Complaint as true. Van Roekel also has only alleged malice conclusory in claiming: "The commencement of the criminal action was commenced with malice." Doc. 1 ¶ 96. This is merely a "conclusory statement" and "naked assertion[] devoid of further factual enhancement[,]" which is insufficient to satisfy the plausibility standard. See Iqbal, 556 U.S. at 678 (citation and internal marks omitted). Van Roekel has failed to plausibly allege a malicious prosecution claim against the City of Brandon and Minnehaha County because she has not alleged facts to satisfy the fourth and fifth prongs under the South Dakota test. Thus, this claim is dismissed.

### 2.  Count VII: False Arrest/Imprisonment Against the BPD Defendants and the JDC Defendants

Van Roekel alleges that the BPD Defendants and the JDC Defendants "unlawfully restrained and arrested [her] against her will." Doc. 1 ¶ 99. Van Roekel alleges "[t]here was a lack of probable cause to arrest [her] and her subsequent detention at the JDC was in contradiction to established state law and policy." Id. ¶ 100. This cause of action is intertwined with the constitutional deprivations Van Roekel asserted against the BPD Defendants and the JDC Defendants in Counts I and IV above.

"In South Dakota, false imprisonment contains two elements: (1) detention or restraint of the person, and (2) unlawfulness of such restraint or detention." Catencamp v. Albright, 251 N.W.2d 190, 191 (S.D. 1977). "False arrest is one of several means of committing the tort of false imprisonment." Heib, 704 N.W.2d at 883. "False arrest describes the setting for false imprisonment when it is committed by a law enforcement officer." Id. (cleaned up and citation omitted). "The existence of probable cause to arrest is a complete bar to false arrest and malicious prosecution claims." Id. at 884.

The BPD Defendants assert that the false arrest claim against them must be dismissed because the arrest of Van Roekel was conducted with probable cause. Doc. 18 at 23–24. As this Court has found above, the BPD Defendants, even taking the facts alleged as true, had probable cause to arrest Van Roekel for a violation of SDCL § 22-19B-1. "The existence of probable cause to arrest is a complete bar to [Van Roekel's] false arrest" claim. See Heib, 704 N.W.2d at 884. Thus, this claim must be dismissed against the BPD Defendants.

The JDC Defendants assert that the false imprisonment claim against them must be dismissed because the detention of Van Roekel did not constitute an arrest under South Dakota

law.  Doc. 13 at 26–27.  However, the elements under South Dakota law only require "detention

or restraint of the person."  Catencamp, 251 N.W.2d at 191.  An arrest by the JDC Defendants is

not an essential element to the claim.  Instead, as Van Roekel alleges, she was detained overnight

at the JDC, which is sufficient to satisfy the first element of false imprisonment.  As explained

above, the lawfulness of the detention is still in dispute, and Van Roekel has plausibly alleged that

she was unlawfully detained overnight instead of being released to her parents.  Thus, when all of

the allegations of the Complaint are taken as true, Van Roekel has plausibly alleged a false

imprisonment claim against the JDC Defendants.  The JDC Defendants' motion to dismiss this

claim is denied.

### 3.  Count VIII: Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress Against All Defendants

Lastly, Van Roekel in Count VIII brings a claim for intentional and negligent infliction of

emotional distress against all Defendants.  Doc. 1 at 21.  Van Roekel alleges that Defendants

engaged in extreme and outrageous conduct, which intentionally or recklessly caused Van Roekel

severe emotional distress.  Id. ¶¶ 103–04.  Van Roekel further alleges that Defendants' conduct

caused her to suffer an extreme disabling emotional response resulting in physical manifestations.

Id. ¶¶ 105–06.

Under South Dakota law, a claim of intentional infliction of emotional distress requires the

plaintiff to prove the following elements: "(1) extreme and outrageous conduct by the defendant;

(2) that the defendant intended to cause severe emotional distress; (3) there must be a causal

connection between the wrongful conduct and the emotional distress; and (4) severe emotional

distress must result."  Stratmeyer v. Engberg, 649 N.W.2d 921, 926 (S.D. 2002) (quoting

Christians v. Christians, 637 N.W.2d 377, 382 (S.D. 2001)).  "[T]his tort requires conduct

36

exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." Tibke v. McDougall, 479 N.W.2d 898, 907 (S.D. 1992) (citation omitted). "For conduct to be 'outrageous,' it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Stene v. State Farm Mut. Auto. Ins., 583 N.W.2d 399, 404 (S.D. 1998) (citation omitted).

As to the intentional infliction of emotional distress claim, Defendants assert that Van Roekel has not sufficiently pleaded allegations showing extreme and outrageous conduct by the Defendants. Doc. 11 at 12–14; Doc. 13 at 27–28; Doc. 18 at 24–26. Taking all of the factual allegations in the Complaint as true, Van Roekel has not sufficiently pleaded "extreme and outrageous conduct" by the BPD Defendants or the BVSD Defendants, which is necessary to prove an intentional infliction of emotional distress claim under South Dakota law. See Tibke, 479 N.W.2d at 907; Stene, 583 N.W.2d at 404. This Court hesitates to dismiss the intentional infliction of emotional distress claim against the JDC Defendants and thinks that claim is better addressed on a motion for summary judgment after discovery on who made the decision to detain Van Roekel and why, and what happened at the JDC with Van Roekel. Thus, Van Roekel's claim of intentional infliction of emotional distress against the BPD Defendants and the BVSD Defendants is dismissed for failure to state a claim. Van Roekel's claim for intentional infliction of emotional distress against the JDC Defendants, however, survives the motion to dismiss.

"To prove negligent infliction of emotional distress, [the plaintiff] must establish that [the defendant] engaged in negligent conduct, including that [the defendant] breached a legal duty imposed by statute or common law." Henning v. Avera McKennan Hosp., 945 N.W.2d 526, 533 (S.D. 2020). A claim of negligent infliction of emotional distress requires a plaintiff to prove

physical manifestations of the emotional distress. See Wright v. Coca Cola Bottling Co., 414 N.W.2d 608, 609–10 (S.D. 1987); Stene, 583 N.W.2d at 404; Nelson v. WEB Water Dev. Ass'n, Inc., 507 N.W.2d 691, 699 (S.D. 1993). "Further, there must be some causal nexus between the distress and the physical injury." Nelson, 507 N.W.2d at 699. "Wright held that when a plaintiff establishes some physical injury, the degree of that injury is a question for the jury." Id. (citing Wright, 414 N.W.2d at 610).

Defendants assert that Van Roekel's claim for negligent infliction of emotional distress fails because she has not sufficiently pleaded what duty was owed to her or facts sufficient to establish negligent conduct. Doc. 13 at 28; Doc. 18 at 26–27. Accepting all of the Complaint's factual allegations as true, Van Roekel has not sufficiently pleaded a plausible claim for negligent infliction of emotional distress against the BPD Defendants or the BVSD Defendants. Van Roekel has neither pleaded what duty was owed to her by the Defendants nor how the Defendants breached that duty. See Henning, 945 N.W.2d at 533. Van Roekel has not alleged what type of physical manifestations of emotional distress she has suffered, but she has alleged such a physical manifestation. See Wright, 414 N.W.2d at 609–10; Stene, 583 N.W.2d at 404; Nelson, 507 N.W.2d at 699. Though the allegation is quite thin against the JDC Defendants, this Court deems the allegations of the Complaint taken as a whole sufficient to state such a claim against the JDC Defendants and declines to dismiss the claim against the JDC Defendants.

## IV.    Conclusion

For the reasons explained at length above, it is

ORDERED that the BVSD Defendants' Motion to Dismiss, Doc. 10, is granted. It is further

ORDERED that the JDC Defendants' Motion to Dismiss, Doc. 12, is granted only in part and is denied as to Counts IV, VII and VIII. It is further

ORDERED that the BPD Defendants' Motion to Dismiss, Doc. 14, is granted. It is further

ORDERED that the BPD Defendants' Motions to Take Judicial Notice, Docs. 16, 34, are granted. It is finally

ORDERED that Van Roekel's Request for Judicial Notice, Doc. 44, is granted.

DATED this 13ᵗʰ day of January, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE